UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOISES ANTONION ALAS PAZ,
A-206-807-130

                        Petitioner,

        v.

WARDEN OF THE CALIFORNIA CITY
DETENTION FACILITY, et. al.,

                        Respondents.

No.  1:26-cv-2881-DC-DMC-HC

FINDINGS AND RECOMMENDATIONS

        Petitioner, an immigration detainee proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See ECF No. 1. Respondents filed an answer, ECF No. 5.

## I. BACKGROUND

        According to Petitioner, he is a citizen of El Salvador who arrived in the United States in August 2014, when he was about 15 years-old. See ECF No. 1, pg. 5. Petitioner contends he left his home country "because [Petitioner] feared been [sic] harm by gang members." Id. Petitioner asserts that he filed a Form I-589, application for asylum and withholding of removal. See id. Petitioner asserts that he was detained on October 15, 2025, and

informed the officer detaining him "that [Petitioner had an opened case and [Petitioner's] next court was on January 29, 2025[1]." Id. at 5-6. Petitioner asserts that he has always complied with his court requirements and never failed to appear. See id. at 6.

Petitioner argues his detention violates his due process rights because he has been detained for over six months without a bond hearing. See id. at 8. Petitioner argues his detention has become unreasonably prolonged and, given he has not been afforded a bond hearing, the Mathews factors weigh in favor of finding Petitioner is entitled to a bond hearing. See id. at 9-13 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  Petitioner contends that at such hearing, the government must bear the burden of proof to "justify ongoing detention by clear and convincing evidence." Id. at 13. Petitioner seeks release, or in the alternative, that Respondents be ordered to provide Petitioner with a constitutionally compliant bond hearing. See id. at 17.

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) because he entered the United States illegally and therefore is an applicant for admission. See ECF No. 5. Respondents assert that "Petitioner's prior release in the discretion of DHS does not have the effect of having converted petitioner's presence in the United States into an 'admission.'" Id. at 2.

## II. DISCUSSION

The undersigned finds Petitioner is subject to § 1226(a) and his detention, absent a warrant issued by the Attorney General nor a statutorily required bond hearing, violates the INA. Additionally, Respondents provide that Petitioner was previously released on his own recognizance and therefore, the undersigned finds that Petitioner's re-detention, without notice or an opportunity to be heard, violates Petitioner's due process rights.  The undersigned will accordingly recommend that Petitioner be released immediately.

/ / /

---

[1] Though Petitioner wrote 2025, the phrasing indicates Petitioner intended to write 2026. However, the undersigned finds this fact does not impact the findings and recommendations herein.

2

**A.     Violation of the INA**

Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the Government has broad discretion whether to release or detain the individual. Id. Further, § 1226(a) provides several layers of review for an initial custody determination. Id. It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.

This Court, and many others, have repeatedly found that § 1225(b) applies only to noncitizens "seeking admission" — a category that does not include noncitizens like Petitioner who were detained within the United States. See Morales-Flores v. Lyons, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position); Zapata v. Kaiser, 801 F. Supp. 3d 919, 2025 WL 2741654, at *10 (N.D. Cal. 2025) (citing Salcedo Aceros, 2025 U.S. Dist. LEXIS 179594, 2025 WL 2637503, at *8) (collecting cases).  Thus, courts have determined that section 1226 rather than section 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States. Cruz v. Noem, No. 1:26-cv-01818-DC-EFB (HC), 2026 U.S. Dist. LEXIS 71893, *8-9 (E.D. Cal. April 1, 2026) (collecting cases).

The undersigned acknowledges the decisions by the Fifth and Eighth Circuit Courts of Appeals in support of Respondents' argument that Petitioner is subject to § 1225(b). See ECF No. 7, pg. 3. However, other Circuit Courts have held differently, and the Ninth Circuit has yet to address the issue. The Seventh Circuit Court of Appeals concluded that DHS is "not likely to succeed on the merits of their argument that those individuals, whom ICE arrested without a warrant [in the interior of the United States], are subject to mandatory detention under § 1225(b)(2)(A)." Castañon-Nava v. U.S. Dep't of Homeland Security, 161 F.4th 1048, 1060-62

3

(7th Cir. 2025). Similarly, the Second Circuit held that "Section 1225(b)(2) therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization" and therefore, a noncitizen who "is not requesting lawful entry into the United States" is subject to Section 1226, given the use of the term "an alien," which has a broader application. Da Cunha v. Freden, 2026 LX 255042, at *18 and*48-49 (2d Cir. Apr. 28, 2026). Further, the Sixth Circuit found that "'§ 1225(a) applies to aliens already present in the United States,'" given the text of the statute, canon against surplusage, and "the government's previously unbroken 29-year streak of applying § 1226(a) as opposed to § 1225(b)(2)(A) to noncitizens" who have lived within the United States for years. Lopez-Campos v. Raycraft, 2026 LX 250200, at *31-31 and *15 (6th Cir. May 11, 2026) (quoting Jennings v. Rodriguez, 583 U.S. 281, 303 (2018))

Following and adopting the reasoning of other courts, the undersigned finds Petitioner is not actively "seeking admission" because he has been living in the United States for years. See Castañon-Nava, 161 F.4th at 1060-62; Da Cunha, 2026 LX 255042, at *18 and*48-49; Lopez-Campos, , 2026 LX 250200, at *31-31 and *15; Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country.).

Such determination is further supported by the factual record here because there is no evidence in the record that an immigration officer made the requisite determinations for § 1225(b)(2)(A) to apply – that Petitioner is seeking admission and not clearly and beyond a doubt entitled to be admitted. Thus, given Petitioner is not "seeking admission," he therefore is not subject to mandatory detention under § 1225(b) and is instead subject to § 1226(a) which entitles Petitioner to the process that statute requires, including at a minimum, a bond hearing. Respondents here have not provided Petitioner a bond hearing, in violation of the INA.

/ / /

/ / /

/ / /

/ / /

4

Further, § 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." There is nothing in the record[2] that indicates that Respondents ever issued a warrant for Petitioner's detention, much less a warrant issued by the Attorney General. "As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." Chogllo Chafla v. Scott, No. 2:25-CV-00437-SDN, 2025 WL 2688541, at *11 (D. Me. Sept. 22, 2025) (emphasis in original). Thus, Petitioner's initial detention violated the INA as the process required by § 1226(a) was not afforded to Petitioner.

This Court has previously ordered release of a petitioner detained pursuant to § 1226(a) absent a warrant, as Petitioner was here. See Mayen v. Warden, California City Detention Ctr., No. 1:26-CV-02354-DAD-AC, 2026 WL 1158217, at *2 (E.D. Cal. Apr. 29, 2026) (ordering petitioner's immediate release as a remedy for failure to issue a warrant prior to detaining petitioner, rejecting respondents' argument that a bond hearing was the proper remedy); see also J.A.C.P. v. Wofford, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) (ordering the petitioner's immediate release after determining petitioner could not be detained pursuant to § 1225(b) and had not been properly detained pursuant to § 1226(a)); Cruz v. Noem, No. 1:26-cv-01818-DC-EFB (HC), 2026 LX 100344 (E.D. Cal. Mar. 31, 2026) (same). Accordingly, the undersigned finds that Petitioner is entitled to immediate release and will recommend such relief.

**B.    Due Process**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including

---

[2] Respondents were directed to "include with the response any and all transcripts or other documents relevant to the determination of the issues presented in the habeas application." ECF No. 4. Respondents failed to attach any documents to the answer.

noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.”). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (“Once it is determined that due process applies, the question remains what process is due.”). The Court considers each step in turn.

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. “Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects.” Zadvydas, 533 U.S. at 690. “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). “Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates ‘an implicit promise,’ upon which that individual may rely, that their liberty ‘will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].” Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). “Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.” Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have “compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey.” R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

///

///

Respondents contend that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) but, as previously addressed, the undersigned finds Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner has resided in this country for over ten years prior to his arrest and detention on October 15, 2025. Petitioner's re-detention on October 17, 2025, was not upon Petitioner's arrival to the United States.

As to whether there exists a protected liberty interest, the Court finds Petitioner was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Respondents do not allege Petitioner's conditional parole was revoked for any reason and instead argue Petitioner is subject to § 1225(b)(2). Thus, by Respondents' own concession, Petitioner's conditional release was not revoked to a due to a change in circumstances. Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over ten years. Despite that, Petitioner has now been detained for over seven months without any evidence of being afforded a bond hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has

7

been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees

8

released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Accordingly, the undersigned will recommend that the petition be granted, Petitioner be released immediately.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.    It is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be GRANTED;

2.    It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner with appropriate conditions of supervision with all Petitioner's documents and possessions;

3.    It is RECOMMENDED that if Respondents seek to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered. At any such hearing, Petitioner shall be allowed to have counsel present;

4.    It is RECOMMENDED that Respondents be ORDERED to file a notice of compliance within three (3) days of the District Judge's order;

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in

written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 21, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE